IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Natural Resources Defense Council, Environmental Justice Health Alliance, Public Citizen, Catskill Mountainkeeper, Center for Coalfield Justice, Clean Water Action, Coming Clean, Flint Rising, Indigenous Environmental Network, Just Transition Alliance, Los Jardines Institute, Southeast Environmental Task Force, Texas Environmental Justice Advocacy Services, Water You Fighting For, West Harlem Environmental Action, Inc., | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 20-cv-3058 (CM) ECF Case |
| v. | ) ) ) | |
| Assistant Administrator Susan Parker Bodine, Administrator Andrew Wheeler, and the United States Environmental Protection Agency, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
COUNTER-STATEMENT OF MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, Plaintiffs respectfully submit this Response to Defendants' Counter-Statement of Material Facts in opposition to Defendants' Motion for Summary Judgment.

**The Policy**

51.     Beginning in early March 2020, EPA began receiving inquiries from co-regulators and regulated entities and groups about how to handle the circumstances caused by the COVID-19 public health crisis, including stay at home and social distancing orders, worker shortages, unavailability of key contractors, and reduced laboratory capacity.

1

Declaration of Lawrence R. Starfield ("Starfield Decl.") ¶ 6.

Response: Undisputed that the cited declaration states that EPA received inquiries as described.

52.    On March 26, 2020, EPA issued the Policy, a complete and accurate copy of which is attached as Exhibit 1 to the Declaration of Michelle Wu (ECF No. 30-1).

Response: Undisputed.

53.    Several states including Illinois, Oregon, and Washington have issued similar enforcement discretion policies. Oregon Department of Environmental Quality (DEQ), "DEQ response to COVID-19," https://www.oregon.gov/deq/Pages/covid-19.aspx (last visited May 23, 2020); State of Washington Department of Ecology, "Compliance assistance," https://ecology.wa.gov/About-us/Get-to-know-us/Coronavirus-Updates/Compliance-assistance (last visited May 23, 2020); State of Washington Department of Ecology, "COVID-19 dangerous waste compliance," https://ecology.wa.gov/Waste-Toxics/Business-waste/Manage-your-waste/covid-19-dw-compliance (last visited May 23, 2020); Illinois Environmental Protection Agency, "Compliance Expectations Statement," https://www2.illinois.gov/epa/topics/Documents/Agency_Compliance_Expectations_Statement.pdf (last visited May 23, 2020).

Response: Disputed. Illinois, Oregon, and Washington have not issued "similar enforcement discretion policies." Unlike EPA, none of the states has announced an intent to waive civil penalties for monitoring and reporting violations during the pandemic. Plaintiffs further dispute the implication that any other states have issued "similar enforcement

discretion policies," for which Defendants have cited no evidence.

**The Petition**

54.     EPA received the Petition on April 1, 2010. Starfield Decl. ¶ 24.

Response: Undisputed that the cited declaration states that EPA received the petition as described. Plaintiffs note that this statement is referenced at ¶ 23 of the cited declaration, not ¶ 24.

55.     The Petition was assigned to EPA's Office of Enforcement and Compliance Assurance ("OECA") for initial review. *Id.* ¶ 25.

Response: Undisputed that the cited declaration states that the petition was assigned as described. Plaintiffs note that this statement is referenced at ¶ 24 of the cited declaration, not ¶ 25.

56.     EPA anticipates considering the potential impact of the requested rulemaking(s) on existing programs (including its impact on the Agency's enforcement discretion) and the resources such an effort would require in light of the potential benefits of such action and competing Agency priorities. Declaration of Anne Idsal ("Idsal Decl.") ¶ 10.

Response: Undisputed that the agency claims to be considering the petition as described, but Defendants' cited evidence does not support the statement in this paragraph.

57.     EPA does not have a single organic statute, but instead derives authority to issue substantive rules from the individual statutes it implements. Idsal Decl. ¶ 9.

Response: This statement is a legal conclusion rather than a statement of fact, to which no response is required.

58.     OECA has circulated the petition to the Offices of Water; Air and Radiation;

Land and Emergency Management; and Chemical Safety and Pollution Prevention for review. Starfield Decl. ¶ 25.

<u>Response</u>: Undisputed that the cited declaration states that OECA circulated the petition as described. Plaintiffs note that this statement is referenced at ¶ 24 of the cited declaration, not ¶ 25.

59.    EPA's Administrator subsequently designated the Office of Air and Radiation to lead EPA's assessment of the effort that would be needed to undertake the requested rulemaking as part of EPA's review of the Petition. *Id.* ¶ 26.

<u>Response</u>: Undisputed that the cited declaration states that EPA's Administrator took the steps described. Plaintiffs note that this statement is referenced at ¶ 25 of the cited declaration, not ¶ 26.

60.    OECA is also assessing the potential impact of the Petition on its enforcement discretion and whether the Petition seeks to impermissibly limit such discretion. *Id.* ¶ 27.

<u>Response</u>: Disputed in part. Undisputed that the cited declaration states that OECA is assessing the Petition as described; disputed that the petition could or does "impermissibly limit" EPA's claimed enforcement discretion. Plaintiffs note that this statement is referenced at ¶ 26 of the cited declaration, not ¶ 27.

**EPA's Environmental Databases**

61.    The Safe Drinking Water Information System—the data source on which Plaintiffs purportedly rely—reflects any instances in which an entity fails to submit required data. *See* https://www.epa.gov/ground-water-and-drinking-water/safe-drinking-water-information-system-sdwis-federal-reporting.

<u>Response</u>: Disputed. Plaintiffs dispute that the information they seek—

contemporaneous public notice of when facilities suspend monitoring and reporting in reliance on the policy—would be available on this database. Plaintiffs also dispute that the database "reflects any instance in which an entity fails to submit required data." Fedinick Decl. ¶ 6, ECF No. 22 ("Audits of the Safe Drinking Water Information System (SDWIS)— the system that logs Safe Drinking Water Act violations—have shown that states often fail to report many violations that occur within their jurisdictions.").

62.     In the event an entity fails to submit a Toxic Release Inventory ("TRI") report by the July 1, 2020 reporting deadline, any member of the public can determine that noncompliance by looking at the data available in the TRI by mid-July. *See* https://www.epa.gov/toxics-release-inventory-tri-program/basics-tri-reporting.

Response: Disputed. Plaintiffs dispute that the information they seek— contemporaneous public notice of when facilities suspend monitoring and reporting in reliance on the policy—would be available on this database. Plaintiffs also dispute that the cited website demonstrates that the public could in fact confirm non-compliance by mid-July.

**Statutory Requirements**

63.     Plaintiffs have not submitted the pre-suit notice required by 42 U.S.C. § 7604(a).

Response: This statement is a legal conclusion rather than a statement of fact, to which no response is required.

**Ongoing EPA Activities**

64.     Since the issuance of the Policy, EPA has been actively involved in issuing

guidance relating to the COVID-19 pandemic. *See* Starfield Decl. ¶ 17.

Response: Disputed in part. Undisputed that EPA has issued guidance. Disputed that EPA has been "actively involved," especially with respect to Plaintiffs' request for disclosure of monitoring and reporting violations claimed to be related to the pandemic, to which EPA has not responded.

65.    EPA has continued to undertake vigorous enforcement activities during the COVID-19 pandemic. *See id.* ¶¶ 18-23.

Response: Disputed in part. Undisputed that the cited declaration states that EPA has undertaken the enforcement activities described in the cited paragraphs. Disputed that this reflects "vigorous enforcement," and recent analyses demonstrate that EPA's enforcement efforts have declined significantly in recent years. *See* EPA, Office of Inspector General Report No. 20-P-0131 (March 31, 2020),

https://www.epa.gov/sites/production/files/2020-04/documents/_epaoig_20200331_20-p-0131_0.pdf; Environmental Integrity Project, Less Enforcement: Communities at Risk; Federal Data Show Decline in EPA Enforcement Leading to Public Health Hazards (Feb. 26, 2019), https://environmentalintegrity.org/wp-content/uploads/2019/02/EIP-Enforcement-Report.pdf.

66.    EPA has undertaken significant enforcement work under the Federal Insecticide, Fungicide, and Rodenticide Act to fight against the sale of products that falsely claim to be effective against COVID-19. *Id.* ¶ 20.

Response: Disputed in part. Undisputed that the cited declaration states that EPA has undertaken the enforcement activities described in the cited paragraph. Disputed that this constitutes "significant enforcement work under the Federal Insecticide, Fungicide, and

Rodenticide Act" in general and noting that courts have recently criticized EPA's failure to protect against health risks under that Act, *see, e.g.*, *In re NRDC*, 956 F.3d 1134 (9th Cir. 2020).

67.     Since the issuance of the Policy, EPA has undertaken multiple enforcement actions to ensure access to safe drinking water. *Id.* ¶ 21.

Response: Undisputed that the cited declaration states that EPA has undertaken the enforcement activities described in the cited paragraph.

68.     Between March 16, 2020, and early May 2020, EPA:

  a.  Opened 52 criminal enforcement cases (more criminal enforcement cases during the COVID-19 emergency than during the first two months of 2020);

  b.  Charged 10 defendants for criminal violations;

  c.  Concluded 122 civil enforcement actions;

  d.  Initiated 115 civil enforcement actions;

  e.  Secured $21.5 million in Superfund response commitments;

  f.  Billed more than $20 million in Superfund oversight costs; and

  g.  Obtained commitments from parties to clean up 68,000 cubic yards of contaminated soil and water.

*Id.* ¶ 22.

Response: Undisputed that the cited declaration states that EPA has undertaken the enforcement activities described in the cited paragraph. As described in response to ¶ 65, however, recent analyses demonstrate that EPA's enforcement efforts have declined significantly in recent years. *See* EPA, Office of Inspector General Report No. 20-P-0131

(March 31, 2020), https://www.epa.gov/sites/production/files/2020-04/documents/_epaoig_20200331_20-p-0131_0.pdf; Environmental Integrity Project, Less Enforcement: Communities at Risk; Federal Data Show Decline in EPA Enforcement Leading to Public Health Hazards (Feb. 26, 2019), https://environmentalintegrity.org/wp-content/uploads/2019/02/EIP-Enforcement-Report.pdf.

Dated: June 5, 2020                         Respectfully submitted,

                                            */s/ Michelle Wu*
                                            Michelle Wu
                                            Natural Resources Defense Council
                                            40 West 20th Street
                                            New York, NY 10011
                                            (646) 889-1489
                                            michellewu@nrdc.org

                                            Aaron Colangelo, admitted *pro hac vice*
                                            Jared E. Knicley, admitted *pro hac vice*
                                            Natural Resources Defense Council
                                            1152 15th Street, NW, Suite 300
                                            Washington, DC 20005
                                            (202) 289-2376
                                            acolangelo@nrdc.org
                                            jknicley@nrdc.org

                                            Gonzalo Rodriguez, *pro hac vice* pending
                                            Natural Resources Defense Council
                                            111 Sutter Street, 21st Floor
                                            San Francisco, CA 90401
                                            (415) 875-6110
                                            grodriguez@nrdc.org

                                            *Counsel for Plaintiffs*

                                            Allison Zieve, admitted *pro hac vice*
                                            Public Citizen
                                            1600 20th Street, NW
                                            Washington, DC 20009
                                            (202) 588-1000
                                            azieve@citizen.org

                                            *Counsel for Plaintiff Public Citizen*